# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
EXPONENTIAL BIOTHERAPIES, INC.,         )
                                        )
                Plaintiff,              )
                                        )
        v.                              )        Civil Action No. 08-1636 (ESH)
                                        )
HOUTHOFF BURUMA N.V.,                   )
                                        )
                Defendant.              )
_____)

## MEMORANDUM OPINION

Plaintiff Exponential Biotherapies, Inc. ("EBI") has sued Houthoff Buruma N.V. ("HB"),
the Netherlands law firm EBI hired to handle a corporate restructuring and financing transaction.
The crux of the dispute between the parties centers on HB's subsequent representation of parties
that were allegedly adverse to the transaction in which HB represented EBI.  HB has moved to
dismiss the case based on lack of personal jurisdiction, the applicability of a forum selection
clause binding EBI to bring this suit in the Netherlands, and *forum non conveniens*.  Before the
Court are HB's motion to dismiss [Dkt. No. 5], EBI's opposition [Dkt. No. 12], and HB's reply
[Dkt. No. 17], as well as EBI's motions in the alternative for jurisdictional discovery or transfer
[Dkt. Nos. 13, 14], HB's opposition [Dkt. No. 16] and EBI's reply [Dkt. No. 19].  For the
reasons set forth herein, the Court will dismiss this case for lack of personal jurisdiction and
deny plaintiff's motions.

## BACKGROUND

Plaintiff EBI is a Delaware corporation which discovers and develops compounds to treat
severe inflammatory disorders.  (Compl. ¶ 4.)  EBI maintained its corporate headquarters and

principal place of business in Washington, D.C., from 2004 to 2006, but has since moved to

McLean, Virginia.  (*Id.*)  Defendant HB is a Netherlands-based law firm with its principal place

of business in Amsterdam (Compl. ¶ 5) and additional offices in Europe.  (Def.'s Mot. to

Dismiss Pl.'s Compl. Based on Jurisdictional Issues ["Mot."] [Dkt. No. 5], Attach. 2, Decl. of

Dirk Knottenbelt ["Knottenbelt Decl."] at ¶ 3.)  HB is not a resident of and has never had an

office in the District of Columbia or any part of the United States.  (Knottenbelt Decl. at ¶ 4.)

HB's attorneys are not licensed to and do not practice law anywhere in the United States[1] (*id.* at

¶ 4), however, HB may represent United States clients abroad.  (Def.'s Reply in Further Supp. of

Its Mot. to Dismiss ["Reply"] [Dkt. No. 17], Attach. 1, Suppl. Decl. of Dirk Knottenbelt ["Suppl.

Knottenbelt Decl."] at ¶ 13; *see also* Pl.'s Opp'n to Def.'s Mot. to Dismiss ["Opp'n"] [Dkt. No.

12] at 18-19.)  HB's website describes, in both Dutch and English, its affiliation with the

American Bar Association, among other organizations, and touts the "international dimension"

of its work.  (Opp'n at 8 n.6.)  EBI claims that HB's website also boasts an "impressive list" of

"many U.S. based clients."  (*Id.* at 18-19.)

      EBI alleges that in April 2004, it "engaged [HB], without a retainer agreement, to provide

legal services for a transnational financing and corporate structuring."[2]  (Compl. ¶ 7.)  EBI

---

[1] While certain HB attorneys have been admitted to practice law in California and New York, they either have never practiced there or have not done so since 1994, when they were employed not by HB, but by a United States law firm.  (Knottenbelt Decl. at ¶ 4.)

[2] In January 2004, EBI B.V., a wholly-owned Dutch subsidiary of EBI (Compl. at ¶ 6), retained HB for "relatively small routine corporate matters." (Opp'n, Attach. 1, Decl. of Bob Berns ["Berns Decl."] at ¶ 11.)  The written retainer agreement incorporated HB's general terms and conditions, which in turn contained a forum selection clause that provided that "[t]he legal relationship between [HB] and those who retain its services is governed by Dutch law" and required "any disputes arising out of [the] relationship [to] be resolved by the competent court of The Hague" in the Netherlands.  (Knottenbelt Decl. at ¶¶ 12-13.)  In December 2004, HB revised its forum selection clause and disseminated the revised terms to EBI B.V. and EBI.  (*Id.* at ¶¶ 14-15.) The parties have briefed the issue of whether the forum selection clause binds EBI to bring

further asserts that Biotempt, B.V., a Dutch biotechnology corporation (Berns Decl. at ¶ 2),

several other Dutch entities, and a Dutch citizen (collectively, "the Adverse Parties") were all

adverse parties to the transaction.  (Compl. ¶ 7.)  Over the course of its engagement with EBI,

HB sent to EBI's D.C. office "invoices for legal services, draft and final work product and

demands for payment…" and "received [from EBI's D.C. office] instruction . . . on work to be

undertaken and payment for that work."  (*Id.* at ¶¶ 4, 9-12.)  In 2006, EBI received several

collection notices at its D.C. office from the Netherlands and Illinois offices of Atradius

Collections ("Atradius"), which HB had hired to collect legal fees.[3]  (*Id.* at ¶¶ 10-11; Knottenbelt

Decl. at ¶ 23.)

     In June 2008, "by letter from [HB] on behalf of [one of the Adverse Parties]," EBI

learned that HB had been retained by three of the Adverse Parties "to challenge the validity of

parts of the corporate transaction that had been undertaken for [EBI] by [HB] in 2004."  (Compl.

¶¶ 7, 13; Berns Decl. ¶¶ 25-28.)  In July 2008, EBI was served with a writ of summons (the

Dutch equivalent of a complaint) naming as defendants two of EBI's subsidiaries and, in its

"Introduction of the Parties," EBI itself.  (Berns Decl. ¶ 29; Knottenbelt Decl. ¶¶ 25-26.)

According to HB, the writ merely "seeks payment of certain unpaid license fees and a

declaratory judgment that [one of the Adverse Parties] properly terminated a patent license it had

---

this suit in the Netherlands.  (*See* Mot. at 22-27; Opp'n at 33-35; Reply at 15-18.)  However,
since this Court finds that it lacks personal jurisdiction over HB, it need not determine the
applicability of the forum selection clause.

     [3] The parties offer conflicting facts regarding these collections and whether Atradius is
based in the Netherlands or Illinois.  Both parties assert that EBI disputed payment of some
amounts, based on its belief that HB's services were inadequate.  (Compl. ¶ 12; Knottenbelt
Decl. ¶¶ 22-24; Berns Decl. ¶¶ 22-25; Mot. at 9-10.)  EBI repeatedly clarifies that any
inadequacies in HB's 2004 services are not the basis for the claims in this suit.  (Opp'n at 1-2, 5
& n.3, 11 n.9, 12 n.10; Berns Decl. ¶ 25; Opp'n, Attach. 3, Decl. of David A. Holzworth
["Holzworth Decl."] at ¶¶ 4, 6, 10.)  Rather, EBI offers this only to show that HB "clearly
understood the locus of [EBI's] operations."  (Opp'n at 12 n.10, 32.)

issued to [an EBI subsidiary]." (Knottenbelt Decl. ¶ 29.) Plaintiff claims that, by representing Adverse Parties on a claim allegedly related to its previous work for EBI, HB has committed legal malpractice and breached its fiduciary duty to EBI. (Compl. ¶¶ 17-19, 21-22.) EBI alleges that HB intended to and did disrupt EBI's worldwide financing, "dilute EBI equity", deprive EBI of "ownership and control" over technology licensed through the 2004 financing and structuring transaction, and divert all or most of EBI's "prospective licensing income stream" to the Adverse Parties. (*Id.* at ¶ 1; Opp'n at 2, 30.)

HB has moved to dismiss EBI's claims based on: 1) lack of personal jurisdiction, 2) the applicability of a forum selection clause binding EBI to bring this suit in the Netherlands (*see supra* note 2), and 3) *forum non conveniens*. EBI opposes HB's motion, claiming that the D.C. long-arm statute (§§ 13-423(a)(1) and (a)(4)) provides for personal jurisdiction, that no forum selection clause applies, and that D.C. is a convenient forum. EBI requests that, if this Court determines it lacks personal jurisdiction or that D.C. is an inconvenient forum, it either grant jurisdictional discovery (Pl.'s Mot. for Disc. in the Alternative, In Aid of Jurisdiction [Dkt. No. 14] ["Disc. Mot."]) or transfer EBI's claims to the District Court for the Eastern District of Virginia (Plaintiff's Motion to Transfer Case In the Alternative [Dkt. No. 13] ["Transfer Mot."]). This Court finds that HB's actions and contacts do not satisfy due process or the D.C. long-arm statute, so it lacks jurisdiction over HB. This Court also 1) denies EBI's request for jurisdictional discovery because EBI has not demonstrated that such discovery will cure the deficiencies in its jurisdictional allegations and 2) cannot transfer EBI's case to the Eastern District of Virginia because plaintiff has not shown that HB is subject to personal jurisdiction there. Therefore, this case will be dismissed for lack of personal jurisdiction.

**STANDARD OF REVIEW**

"The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. New York Zoological Society*, 894 F.2d 454, 456 (D.C. Cir. 1990) (citing *Reuber v. United States*, 750 F.2d 1039, 1052 (D.C. Cir. 1984)), and it "cannot rely on conclusory allegations." *D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 89 (D.D.C. 2008). "When considering personal jurisdiction, the [c]ourt need not treat all of the plaintiff's allegations as true. Instead, the court 'may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts.'" *Id.* at 90 (citations omitted); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). However, "factual discrepancies in the record must be resolved in favor of the plaintiff." *New York Zoological*, 894 F.2d at 456.

**ANALYSIS**

**I.      Personal Jurisdiction**

"In a diversity case, the federal district court's personal jurisdiction over the defendant is coextensive with that of a District of Columbia court." *Helmer v. Dolestskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004). Personal jurisdiction has two variations: "(1) general, 'all purpose' adjudicatory authority to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity, and (2) specific jurisdiction to entertain controversies based on acts of a defendant that touch and concern the forum." *D'Onofrio*, 534 F. Supp. 2d at 90 (quoting *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 81 (D.D.C. 2006)). Here, EBI does not claim that HB is subject to this Court's general jurisdiction. Specific jurisdiction requires a court to find that "(1) jurisdiction over the defendant [is] authorized by the forum's long-arm statute, here D.C. Code § 13-423; and (2) the exercise of that jurisdiction [satisfies] the federal requirement of constitutional due process." *Id.*

EBI claims that §§ 13-423(a)(1) and (a)(4) authorize personal jurisdiction over HB.

(Opp'n at 18-26.)  In relevant part, the D.C. long-arm statute provides:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's–
>
> (1) transacting any business in the District of Columbia;
>
>    . . .
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code §§ 13-423(a)(1), (a)(4).  "Section (a)(1)'s 'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry.  Section (a)(4) has been construed more narrowly, however." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (internal citations omitted).  "[A]pparently [it was] intended that the (a)(4) subsection would not occupy all of the constitutionally available space . . ..[B]y requiring a plus factor (some other reasonable connection between the state and the defendant separate from and in addition to the in-state injury), [the drafters] made (a)(4) more restrictive."  *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (internal quotation marks omitted).  Finally, § 13-423(b) makes clear that "the [defendant's] contacts with the District of Columbia must relate to the factual circumstances giving rise to the suit in order to support 'specific jurisdiction'[.]"  *Koteen v. Bermuda Cablevision Ltd.*, 913 F.2d 973, 974-75 (D.C. Cir. 1990).

To satisfy the Due Process Clause, a plaintiff must show that the defendant "purposefully avail[ed] himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws," *Kopff*, 425 F. Supp. 2d at 83 (quoting *Hanson v.*

*Denckla*, 357 U.S. 235, 253 (1958) (citation omitted)), and that the defendant has "'minimum

contacts' . . .[and] "'conduct and connection with the forum [s]tate . . .such that he should

reasonably anticipate being haled into court there.'" *GTE New Media*, 199 F.3d at 1347 (citing

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *World-Wide Volkswagen Corp. v.

Woodsen*, 444 U.S. 286, 297 (1980)).

**A.  Section 13-423(a)(1)**

"[C]ourt[s] must determine whether there is personal jurisdiction pursuant to (a)(1) 'on a

case-by-case basis, noting in each the particular activities relied upon by the resident plaintiff as

providing the supposed basis for jurisdiction.'" *Formica v. Cascade Candle Co.*, 125 F. Supp.

2d 552, 554 (D.D.C. 2001) (citing *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46,

49 (D.D.C. 1994)).  EBI argues that § 13-423(a)(1) and due process requirements are met

because: 1) HB entered into a contractual attorney-client relationship with EBI in 2004 (Opp'n at

19, 24); 2) HB frequently communicated with EBI at its D.C. headquarters through telephone,

email, facsimile, and ordinary mail (Opp'n at 20); 3) HB maintains a website that touts

membership in the American Bar Association and "many U.S. based clients" (Opp'n at 18); 4)

the proceeds of the 2004 transnational financing undertaken by HB for EBI were remitted to EBI

bank accounts in the U.S., including D.C. (Opp'n at 19); and 5) HB hired a company with an

office in Illinois to collect unpaid attorneys' fees from EBI. (Opp'n at 12 n.10, 32.)

Neither HB's act of contracting to provide legal services to EBI, nor its representation of

EBI in the Netherlands, subjects HB to suit in D.C.  While negotiating or performing business

contracts has qualified as "transacting business" for purposes of § 13-423(a)(1), *Overseas

Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F. Supp. 2d 47, 51

(D.D.C. 1998), entering into a contract with an out-of-state party does not *by itself*, as EBI

acknowledges (Opp'n at 20), establish minimum contacts or constitute purposeful availment.

*See COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 524 (D.D.C. 1995).  There must

be a "substantial connection" between the contract and the forum, *see Helmer*, 393 F.3d at 205

(citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)),  which often exists where the

contract is to be performed, in whole or in part, in D.C.[4]  Where the contract was "neither made

nor performed in the District, and no services were provided or to be provided here," the contract

does not justify the exercise of personal jurisdiction over the non-resident defendant.  *COMSAT*,

900 F. Supp. at 524; *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986).  As

HB correctly points out, several circuits, as well as many district courts, have held that an

attorney-client relationship does not subject a non-resident attorney or law firm to personal

jurisdiction in its client's home forum where legal services were rendered outside of the client's

home forum.  (Mot. at 17-19.)  Moreover, many of these courts applied long-arm statutes like

§ 13-423(a)(1) (requiring the transaction of business in the forum state and coextensive with the

Due Process Clause) to facts similar to those alleged here by EBI.[5]  In response, EBI offers no

---

[4] *See, e.g.*, *Helmer*, 393 F.3d at 203, 205-06 (finding personal jurisdiction over foreign girlfriend where contract for financial support was *contingent* on her agreement to have credit card statements sent to boyfriend's home in the U.S. and payments made by boyfriend from the U.S.); *Mouzavires v. Baxter*, 434 A.2d 988 (D.C. 1981) (finding personal jurisdiction over defendant attorney where the contract contemplated that a significant amount of the legal representation would be performed in the attorney's D.C. offices); *Overseas Partners*, 15 F. Supp. 2d at 49, 51 (finding personal jurisdiction where out-of-state defendant actively solicited in-state defendant for contract, contract was negotiated in D.C., and defendant's agents traveled to D.C. to discuss the contract with U.S. subcontractors); *Abramson v. Wallace*, 706 F. Supp. 1, 1-2 (D.D.C. 1989) (finding personal jurisdiction over defendant computer programmer where contract was negotiated in D.C. and where contracted-for program was developed in D.C. to be sold to D.C. hospitals).

[5] *See Sawtelle v. Farrell*, 70 F.3d 1381, 1385-88, 1392 (1st Cir. 1995) (New Hampshire district court did not have personal jurisdiction over Florida and Virginia attorneys hired by New Hampshire residents to represent their son's estate in a Florida litigation, despite defendants' transmittal of legal advice in letters and phone calls to New Hampshire.); *Austad Co. v. Pennie &*

facts regarding the location of the contract's execution, nor does it dispute that HB performed its

legal work and represented EBI in the Netherlands.  (*See, e.g.*, Mot. at 6, 15, 17 & n.9, 19, 30,

38; Opp'n at 18-20; Compl. at ¶ 7.)   Plaintiff must establish more than the attorney-client

relationship and contacts incidental to the attorney-client relationship in order to meet § 13-

423(a)(1) and constitutional due process requirements.

      HB's telephone calls, emails, facsimiles and mailings, including invoices, to EBI's D.C.

office are insufficient to subject it to this Court's personal jurisdiction.  *Dove,* 1987 WL 18739

at *3 ("Exchange of letters and telephone communications with a party in [D.C.] alone is not

---

*Edmonds*, 823 F.2d 223, 224-25 & n.3, 226-27 (8th Cir. 1987) (South Dakota district court did
not have personal jurisdiction over New York law firm that represented South Dakota
corporation in patent litigation in Maryland, even though firm had sent an associate and a law
clerk to South Dakota to review and copy documents and gather information.); *Dove v. United
States*, No. 86-cv-65, 1987 WL 18739, at *1-*4 (D.D.C. Oct. 9, 1987) (no personal jurisdiction
over Virginia attorneys whose representation of D.C. residents regarding a loan involved
telephone conversations with D.C. and receipt of mail from D.C., even where one defendant was
admitted to the D.C. bar); *Estate of Martinez v. Yavorick*, 455 F. Supp. 2d 115, 117-18, 120-24
(D. Conn. 2006) (no personal jurisdiction over Ohio attorneys who merely initiated contacts with
Connecticut to investigate the viability of Ohio residents' claim pertaining to their daughter's
death in a Connecticut housefire); *Salisbury Cove Assocs., Inc. v. Indcon Design (1995) Ltd.*, 211
F. Supp. 2d 184, 188-91 & n.2 (D. Me. 2002) (no personal jurisdiction over Canadian attorneys
hired by a Maine company to manage a contract for the purchase of bottling machinery from a
Canadian seller); *We're Talking Mardi Gras, LLC v. Davis*, 192 F. Supp. 2d 635, 636-38, 639-41
(E.D. La. 2002) (no personal jurisdiction over a Georgia patent attorney who, while representing
a Louisiana company and its Texas partners, performed all legal work in Georgia); *Kaempe v.
Myers*, No. IP-01-0424-D-H/K, 2001 WL 1397291, at *1-*9 (S.D. Ind. Nov. 6, 2001) (no
personal jurisdiction over D.C. patent attorney whose representation of Illinois resident involved
performing all legal work in D.C., sending bills to the client's Illinois office, and receiving
payment from the client's Illinois office, and did not involve any visits to the client in Illinois);
*Worthington v. Small*, 46 F. Supp. 2d 1126, 1127-30 (D. Kan. 1999) (no personal jurisdiction,
despite the defendant attorney's being licensed to practice law in Kansas, because his legal
practice was centered in Missouri and the contract at issue did not contemplate the performance
of any services in Kansas); *Cape v. von Maur*, 932 F. Supp. 124, 125-28 & n.1 (D. Md. 1996)
(no personal jurisdiction where defendant attorneys resided in Germany, retainer agreement was
executed in Germany, and all legal services were rendered in Germany); *Keith v. Frieberg*, 492
F. Supp. 65, 66-67 (D. Neb. 1980) (no personal jurisdiction over South Dakota attorneys retained
by a Nebraska resident to litigate in South Dakota a personal injury suit involving a car accident
on a South Dakota Indian Reservation).

considered a jurisdictionally significant contact.") (quoting *Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F. Supp. 558, 563 (D.D.C. 1981)).  *Id.* ("[T]he mere delivery of documents . . .does not confer jurisdiction under 423(a)(1).")  (citing *Bueno v. Law Compania Peruana de Radiodifusion*, 375 A.2d 6, 9 (D.C. 1977)).  After all, such communications are incidental to nearly every business relationship; they are not indicative of any desire to do business in D.C. and do not suffice to show purposeful availment or minimum contacts.  *See id.*; *COMSAT*, 900 F. Supp. at 523.

HB's website similarly does not subject it to personal jurisdiction in D.C.  Plaintiff suggests HB's website solicits business from U.S. clients by emphasizing its "Anglo-American friendly capabilities," including use of English, its "impressive list of U.S. based clients," and its international pedigree.  (Opp'n at 18-19; Berns Decl. at ¶¶ 8-10.)  While D.C. courts have established that a defendant's extensive advertising activity aimed at D.C. residents can subject it to the personal jurisdiction of the D.C. courts, *see, e.g.*, *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 330-37 (D.C. 2000), they have also held that a defendant's maintenance of a website merely accessible to D.C. residents, as well as anyone with a computer and internet access, does not.  *See GTE New Media*, 199 F.3d at 1349-50 (The argument that "mere accessibility of the defendants' websites establishes the necessary 'minimum contacts' with this forum . . .simply cannot hold water."); *Doe v. Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005) ("[A] website accessible by computers in [D.C.], or by [D.C.] residents, is not purposeful availment; rather it is merely an unavoidable side-effect of modern internet technology.").  Furthermore, the Court is not persuaded that the website's use of English denotes any targeting of D.C. residents.  English is widely-used across the globe, including in London where HB has an office.  (Knottenbelt Decl. at ¶ 3.)  Lastly, even demonstrating that HB's website is meant to

attract the business of U.S. residents would be insufficient to demonstrate purposeful availment in D.C.

EBI's final argument for the exercise of personal jurisdiction over HB – the remittance of EBI's proceeds from the 2004 transaction to U.S. banks, some of which were in D.C., and HB's use of Atradius, possibly based in Illinois, to collect legal fees from EBI – is also insufficient. "A plaintiff may not . . .depend upon his own activity to establish the existence of minimum contacts; the defendant must in some way have voluntarily and purposefully availed himself of the protection of the forum state's laws." *COMSAT*, 900 F. Supp. at 522-23. Random, fortuitous, or attenuated contacts will not suffice. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299; *Shoppers*, 746 A.2d at 331. Plaintiff has offered no facts to show that the remittance to D.C. banks of proceeds from the 2004 transaction for which HB provided legal services resulted from any decision or action by HB. Atradius' mailing of a collections notice from its Illinois office to EBI's D.C. office is, at best, a random act by a company hired by HB. In both instances, HB's contacts with D.C. are attenuated, and thus, they cannot support personal jurisdiction.

### B.  Section 13-423(a)(4)

To establish personal jurisdiction over a defendant pursuant § 13-423(a)(4), a plaintiff must show that a defendant's act or omission outside of D.C. caused a tortious injury in D.C. *and* that the defendant "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C.Code § 13-423(a)(4). EBI cannot satisfy this test. EBI alleges that HB's representation of several of the Adverse Parties and HB's alleged refusal to return

EBI's "privileged, confidential and proprietary business information" (Compl. ¶ 5) were acts and omissions that occurred in the Netherlands and caused significant damage to EBI's worldwide financing, equity, and intellectual property rights (*see* Compl. ¶¶ 19-22; Opp'n at 2, 5, 28, 30.) EBI fails, however, to allege any injury that occurred in D.C.

EBI argues that in 2008 it suffered economic and reputational injury as a result of HB's malpractice and breach of fiduciary duties.  (*See, e.g.*, Compl. ¶¶ 19, 22; Opp'n at 2, 28, 31.) EBI, however, has resided in Virginia since before 2008 and thus could only have suffered its financial losses, if any, in Virginia, not in D.C. [6]  (*See* Compl. ¶ 4; Opp'n at 39.)  EBI twice has admitted as much.  (*See* Opp'n at 39 ("[EBI] has a principal place of business in the [Eastern District of Virginia] and injury resulting from the alleged reputational and financial damage will be sustained [there].");  Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Jurisdictional Disc. and Transfer ["Disc. and Transfer Reply"] [Dkt. No. 19] at 2 ("[T]he core damage sought to be inflicted by HB should also be presumed to be sustained principally in the residence of the intended victim.").)

D.C. case law further shows that EBI was not injured "in D.C." for purposes of § 13-423(a)(4).  While the D.C. Circuit has stated that economic injury does not necessarily occur where the plaintiff is domiciled, *Helmer*, 393 F.3d at 208-09, it did so in determining that the alternate injury site was the location of the "original events that caused the alleged injury," not the plaintiff's prior domicile.  *Id.* at 209 (declining to exercise personal jurisdiction over

---

[6] Plaintiff, on one occasion, suggests that "HB breached its fiduciary duties of confidentiality and loyalty to EBI the  minute it undertook representation of the [Adverse Parties], regardless of how and when accusations [in the 2008 writ of summons] were made against EBI."  (Opp'n at 13 n.11.)  Since plaintiff has not offered facts to show that HB began representing the Adverse Parties prior to 2008, this Court cannot presume that the injury somehow occurred when EBI still resided in D.C.

plaintiff's fraud claim because his injuries occurred in Russia, where his girlfriend had used his credit cards and purchased and registered in her name a Moscow apartment).  By this reasoning, EBI may have been injured in the Netherlands.  However, when the D.C. Circuit has found tortious injuries in D.C., the plaintiffs have resided there at the time they suffered the financial losses or reputational damage,[7] *compare New York Zoological*, 894 F.2d at 457-58 *with Gandal v. Telemundo Group Inc.*, 997 F.2d 1561, 1565 (D.C. Cir. 1993); have been injured in D.C. by defective imported products, *see Gatewood v. Fiat S.p.A.*, 617 F.2d 820, 822, 827-28 (D.C. Cir. 1980); or have had their revenues from D.C. consumers or business relationships tortiously interfered with.  *See Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201-02, 206 (D.C. Cir. 1981); *New York Zoological*, 814 F.2d at 458.  EBI does not fall within any of these examples.

EBI alleges that its lost revenue would have flowed to U.S. banks, some of which have branches in D.C. (Opp'n at 1), but this is a far cry from losing revenue derived from D.C. consumers.  *See Kaiser Stuhl Wine*, 647 F.2d at 201-02, 206.  EBI also claims that products tied to its licensed technology "may [have attracted] highly profitable licensing opportunities with medical research and development companies and institutions throughout the U.S. in addition to being of great interest to both U.S. health institutions and the U.S. military . . .[.]"  (Opp'n at 6; Berns Decl. ¶ 4; *see* Opp'n at 30.)  EBI even describes what "likely licenses . . .within the Greater Metropolitan Washington Area" might have included and lists some government institutions with which it might have collaborated.  (Berns Decl. ¶¶ 5, 6.)  Finally, EBI asserts

---

[7] EBI's attempt to analogize its case to *Calder v. Jones*, 465 U.S. 783 (1984), and a similar D.C. defamation case, in order to establish personal jurisdiction based on HB's alleged commission of intentional torts causing injuries in D.C. (Opp'n at 2, 20-23, 28), fails because, while those plaintiffs resided in the forum states when they were injured, *see Calder*, 465 U.S. at 785, 788-89; *New York Zoological*, 894 F.2d at 457-58, EBI did not.  (*See* Compl. at ¶ 4; Opp'n at 39.)

that all of its "licensing activities throughout the U.S. have been channeled through EBI's principal place of business in D.C., and later, in McLean, [Virginia]." (Opp'n at 7; Berns Decl. ¶ 5.) These speculations – that EBI has lost revenues it *might* have derived in the future from licensing technology, which it *might* lose as a result of HB's work for the Adverse Parties, to entities that *might* be located in the D.C. area – do not show the tortious injury in D.C. required by § 13-423(a)(4). Since EBI has not shown tortious injury in D.C., the Court need not consider whether it has alleged sufficient facts to meet § 13-423(a)(4)'s additional requirements.

Additionally, since EBI has not established this Court's personal jurisdiction over HB pursuant to either §§ 13-423(a)(1) or (a)(4), this Court does not have to resolve "whether the exercise of personal jurisdiction is reasonable or fair [based on] [D.C.'s] 'interest in adjudicating the dispute.'" *Formica*, 125 F. Supp. 2d at 556 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

## II.     Jurisdictional Discovery

EBI requests leave to conduct limited jurisdictional discovery on HB's contacts in D.C., Virginia, where EBI currently has its principal place of business, and New York, where EBI maintains a license to do business. (Disc. Mot. at 1; Opp'n at 38-39.) "'As a general matter, discovery . . .should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction." *Kopff*, 425 F. Supp. 2d at 89 (citing *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991)). "Jurisdictional discovery, however, is justified only if the plaintiff reasonably 'demonstrates that it can supplement its jurisdictional allegations through discovery.'" *Id.* (citing *GTE New Media*, 199 F.3d at 1351). "Mere conjecture or speculation" is not enough. *FC Investment Group LC v. IFX Markets Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008).

EBI's request for jurisdictional discovery is based on its own contacts with D.C., Virginia and New York (*see* Disc. Mot. at 1-2), and its hope that jurisdictional discovery will reveal that HB has substantial specific and general jurisdictional contacts due to 1) HB's solicitation of U.S. clients, in part through its participation in various legal organizations; 2) HB's visits to its U.S. clients and 3) HB's attendance at legal education seminars in the U.S. [8]  (*See* Opp'n at 5-6, 8; Disc. and Transfer Reply at 1-2 & Ex. A at 6-8.)   Of course, personal jurisdiction over a foreign defendant cannot be based on the plaintiff's contacts with the forum, *see, e.g.*, *NAWA USA, Inc. v. Bottler*, 533 F. Supp. 2d 52, 56 (D.D.C. 2008), and the additional grounds offered for jurisdictional discovery are not persuasive.

Under D.C. law, both specific and general personal jurisdiction require contacts with D.C.  *See* D.C. Code §§ 13-423(a)-(b), 13-334(a).   Yet, nowhere in EBI's briefing does EBI suggest that HB's participation in U.S. and international legal organizations is somehow tied to D.C., that HB travels more than occasionally to D.C. in the course of representing other clients, or that HB attends legal seminars in D.C. [9]  EBI only claims discovery will show HB's contacts with the U.S. generally, and such contacts will not help EBI establish this Court's personal jurisdiction over HB.

Furthermore, since EBI's claim does not arise out of HB's organizational affiliations, HB's travel to the U.S., or legal seminars, its attempt to establish specific personal jurisdiction will not be helped by discovery pertaining to these activities.  *See* D.C. Code § 13-423(b); *Koteen*, 913 F.2d at 974-75 ("[T]he [defendant's] contacts with the District of Columbia must

---

[8] At the outset, this Court notes that no amount of discovery will establish personal jurisdiction under § 13-423(a)(4), because EBI's lack of injury in D.C. is incurable.

[9] Nor does EBI allege that HB conducts any of these activities in Virginia or New York.

relate to the factual circumstances giving rise to the suit in order to support 'specific jurisdiction'[.]").

EBI's factual allegations are similarly insufficient to support general jurisdiction.  Section 13-334(a) provides for general jurisdiction "'over a foreign corporation as to claims not arising from the corporation's conduct in the District [] if the corporation is "doing business" in the District.  Under the Due Process clause, such general jurisdiction . . . is only permissible if the defendant's business contacts with the forum are "continuous and systematic," *FC Investment Group LC*, 529 F.3d at 1091-92, which is a "high bar" that requires a greater showing than specific jurisdiction.  *D'Onofrio*, 534 F. Supp. 2d at 90.  EBI offers only its own conclusory statements that it believes HB attends seminars, visits clients, and solicits business in the United States.  (*See* Opp'n at 5-6, 8; Disc. and Transfer Reply at 1-2.)  Although HB concedes that it may occasionally visit the U.S., and possibly D.C., in the course of representing U.S. clients in the Netherlands, EBI offers nothing to suggest that these occasional visits, or the legal seminars, if they occur in D.C., meet the "steep requirement" of "continuous and systematic" contacts. *D'Onofrio*, 534 F. Supp. 2d at 90.

### III.    Transfer to the Eastern District of Virginia

EBI asks that, if this Court finds it lacks personal jurisdiction and denies EBI's request for jurisdictional discovery, it transfer the case to the District Court for the Eastern District of Virginia.  A district court may only transfer a civil action to another "district or division in which [the case] might have been brought."  28 U.S.C. §§ 1404(a), 1406(a); *see Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  This Court, therefore, may not transfer EBI's case to the Eastern District of Virginia unless it first determines that that court has personal jurisdiction over HB and that venue is proper there.  *See Sharp Elecs. Corp. v. Hayman*

*Cash Register Co.*, 655 F.2d 1228, 1230 (D.C. Cir. 1981) (per curiam).  This Court need not

determine the latter because plaintiff has not established that HB is subject to either specific or

general personal jurisdiction in Virginia.

Virginia's long-arm statute is, in relevant part, identical to D.C.'s.[10] *Compare* Va. Code

§ 8.01-328.1(A) *with* D.C. Code § 13-423(a).  For the same reasons EBI's factual allegations are

insufficient to support jurisdiction in this Court, they do not establish personal jurisdiction in

Virginia.  (*See supra* pp. 5-13; *see also* Opp'n at 7-8, 18, 39-40; Transfer Mot.; Disc. and

Transfer Reply at 2.)  Although any economic or reputational injury EBI may have suffered as a

result of HB's 2008 representation of the Adverse Parties could have been suffered in Virginia,

the site of EBI's principal place of business (Compl. ¶ 4), in-forum injury caused by out-of-

forum actions is not enough to meet Virginia's long-arm statute.  *See* Va. Code § 8.01-

328.1(A)(4).  EBI must also allege facts showing that HB does or solicits business in, engages in

a persistent course of conduct in, or derives substantial revenue from Virginia.  *Id.*  EBI has

not.[11]

---

[10] Virginia's long-arm statute states, in relevant part:

A court may exercise personal jurisdiction over a person, who acts directly or by
an agent, as to a cause of action *arising from* the person's:
(1) Transacting any business in this Commonwealth;
(2) Contracting to supply services or things in this Commonwealth;
(3) Causing tortious injury by an act or omission in this Commonwealth;
(4) Causing tortious injury in this Commonwealth by an act or omission outside
this Commonwealth if he regularly does or solicits business, or engages in any
other persistent course of conduct, or derives substantial revenue from goods used
or consumed or services rendered, in this Commonwealth.

Va. Code § 8.01-328.1(A); *see also Pearson v. White Ski Co., Inc.*, 228 F. Supp. 2d 705,
708 (E.D. Va. 2002).

[11] EBI's argument that HB's website constitutes solicitation of business is as unavailing
under Virginia law as under D.C. law.  *See Pearson*, 228 F. Supp. 2d at 709.

Virginia courts only have general personal jurisdiction over "a defendant whose activities in Virginia are 'continuous and systematic[,]' . . .[and] the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *RZA Holdings AVV v. PDVSA Petroleos S.A.*, 293 F. Supp. 2d 645, 652 n.9 (E.D. Va. 2003) (citations omitted). EBI has offered no factual allegations of contacts that, by any stretch of the imagination, could be characterized as "continuous and systematic." (*See* Opp'n at 7-8, 18, 39-40; Transfer Mot.; Disc. and Transfer Reply at 2.)  Since EBI has not established that a Virginia court will have personal jurisdiction over HB, transfer is not possible.

## CONCLUSION

For the foregoing reasons, the Court will grant HB's motion and dismiss this case, without prejudice, for lack of personal jurisdiction.  The Court will deny EBI's motions for jurisdictional discovery and transfer to the District Court for the Eastern District of Virginia.  A separate order accompanies this Memorandum Opinion.


                                         _____/s/_____
                                         ELLEN SEGAL HUVELLE
                                         United States District Judge


Date: July 30, 2009